UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS C. RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-CV-81 NAB |
| | ) | |
| THOMAS J. VILSACK,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff Curtis Rodgers filed this *pro se* action alleging various grievances related to a conservation easement he sold to Defendant United States as part of the Wetlands Reserve Program administered by the Natural Resources Conservation Service in partnership with state and local agencies. [Doc. 1.] Rodgers challenges an enforcement action instituted against him and asserts that officials have mismanaged the wetlands on his property. He seeks monetary damages and rescission of the easement. The United States filed a Motion to Dismiss, arguing that the Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity. [Docs. 3, 4.] The motion was fully briefed. [Docs. 9, 10, 11.] Upon review of the relevant law and with due consideration for Rodgers' *pro se* status, the Court ordered additional briefing on potential jurisdictional bases for Rodgers' Complaint. [Doc. 14.] The parties submitted supplemental memoranda. [Docs. 15, 16.] For the reasons set forth below, the Court will grant the United States' Motion to Dismiss.

---

[1] The United States is the only proper defendant in an action to quiet title. 28 U.S.C. § 2409a(a); *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 278 n.4, 103 S. Ct. 1811, 1815, 75 L. Ed. 2d 840 (1983).

**I. Background**

Rodgers filed this *pro se* action alleging various grievances related to a conservation easement[2] he sold to the United States as part of the Wetlands Reserve Program (WRP) administered by the Natural Resources Conservation Service (NRCS) in partnership with state and local agencies. Under the WRP, the NRCS entered the real estate business by purchasing easements from landowners who agreed to cooperate in protecting, restoring, and enhancing the wetlands on their property.[3] The WRP marked the federal government's first nationwide effort to utilize conservation easements.[4] Conservation easements are generally in gross, negative easements granting "a nonpossessory interest of a holder in real property imposing limitations or affirmative obligations the purposes of which include retaining or protecting natural, scenic, or open-space values of real property."[5] Between 1992 when the first WRP easements were purchased and 2014 when the program was repealed, more than 11,000 landowners enrolled over 2.3 million acres.[6] Rodgers is one such landowner. He sold the United States the conservation easement at issue in this case in October of 1998, receiving $1,119,000 as consideration. While reserving a limited number of rights to Rodgers, the easement agreement largely imposes obligations on him and gives the United States broad management authority over the easement area. [Doc. 16-1.]

---

[2] Rodgers' Complaint refers to a singular "easement" throughout, but requests rescission of easement agreement numbers 65-6424-8-8486 and 66-6424-2-2782. The Court has received a copy of easement agreement number 65-6424-8-8486 [Doc. 16-1], which is consistent with descriptions of the "easement" in Rodgers' Complaint. The Court will treat easement agreement number 65-6424-8-8486 as the basis of Rodgers' Complaint.

[3] Natural Resources Conservation Service, Wetlands Reserve Program, http://www.nrcs.usda.gov/wps/portal/nrcs/main/national/programs/easements/wetlands/ (last visited July 20, 2015).

[4] Brian J. Oakey, *The Wetlands Reserve Program: Charting A Course Through the WRP*, 8 Drake J. Agric. L. 631, 633 (2003).

[5] *Id.* at 644.

[6] Natural Resources Conservation Service, *Restoring America's Wetlands: A Private Lands Conservation Success Story*, http://www.nrcs.usda.gov/Internet/FSE_DOCUMENTS/stelprdb1045079.pdf (last visited July 20, 2015).

Since the execution of the easement, relations between Rodgers and WRP officials have soured. Rodgers claims that officials have harassed and intimidated him, leading him to file a complaint against one official. At some point, officials instituted a Corrective Action Plan (CAP) ordering Rodgers to remove five dams that he had constructed on the property and to conduct other restoration activities at his own expense. [Doc. 16-2.] He was also assessed $20,191 in fines for harvesting trees. Rodgers repeatedly requested a hearing and was denied one. In July of 2014, Kim Burns, NRCS Easement Programs Division Director, denied Rodgers' final request citing 7 C.F.R § 1467.18 which states "[e]nforcement actions undertaken by the NRCS in furtherance of its federally held property rights are under the jurisdiction of the federal courts and not subject to review under administrative appeal regulations." Believing he had to file a claim in federal court, Rodgers filed this action in August of 2014 seeking rescission of the easement and $11,920,000 in damages.

Rodgers' property is 6200 acres, 3500 acres of which has been laid bare by strip mining. The east fork of the Chariton River runs through his property for more than four miles. While Rodgers received $223,000 toward restoration through the WRP, he asserts that there are significant design flaws in the wetlands pools on his property, that he has been cut out of the restoration process, and that the only true restoration work that has been done has been done by him at his own expense. According to Rodgers, he spent hundreds of thousands of dollars building dams in order to filter acid runoff, provide water for the wetlands pools, and provide a habitat for wildlife, along with aesthetic beauty. Rodgers contends that he received official permission to build the dams subject to the CAP and to harvest the trees subject to the fines. Rodgers also claims that design flaws caused him to lose duck hunting business in 2011 and 2012 due to lack of water. The $11,920,000 in damages Rodgers seeks includes $80,000 for the

lost duck hunting seasons, $840,000 for renovation to 420 acres of pool area, and $11,000,000 for damage to his health and trespass to quiet enjoyment.

The United States filed a Motion to Dismiss Rodgers' Complaint, arguing that his claims were foreclosed under the Quiet Title Act and therefore jurisdiction was lacking. [Doc. 3] Upon review of the relevant law and with due consideration for Rodgers' *pro se* status, the Court ordered additional briefing on the following issues: (1) whether the Complaint sets forth a scope-of-easement claim under the Quiet Title Act, (2) whether the Complaint sets forth a contract claim within the exclusive jurisdiction of the United States Court of Federal Claims, (3) if the Complaint sets forth both a scope-of-easement claim under the Quiet Title Act and a contract claim under the Tucker Act, whether the action should be bifurcated and the contract claim transferred to the United States Court of Federal Claims, and (4) whether the Complaint sets forth a claim under the Administrative Procedures Act. [Doc. 14.] The Court reminded Rodgers that he is "absolute master of what jurisdiction he will appeal to," *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480, 35 S. Ct. 658, 59 L. Ed. 1056 (1915), and directed that he inform the Court if he did not wish to pursue a claim under the Tucker Act or the Administrative Procedures Act. In response to the Court's order, Rodgers indicated he wished to pursue a claim under the Quiet Title Act and a bifurcated claim for monetary damages in the United States Court of Federal Claims. [Doc. 15.]

## II. Legal Standard

Rule 12(b)(1) provides that a party may move to dismiss an action based on "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). A facial attack challenges the complaint on its

face such that a court must take the complaint as true. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A factual attack challenges "the existence of subject matter jurisdiction in fact, quite apart from any pleading" such that a court "may proceed as it never could under 12(b)(6)" being "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* "'In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.'" *Osborn*, 918 F.2d at 730 (quoting *Mortensen*, 549 F.2d at 891). While the United States initially made a facial attack on Rodgers' Complaint, in its supplemental memorandum, the United States relied on information outside of the pleadings, including the easement agreement and the CAP. [Docs. 16, 16-1, 16-2.] The Court may similarly go beyond the Complaint to determine whether subject matter jurisdiction exists in fact.

## III. Discussion

Subject matter jurisdiction refers to a court's power to hear a case and cannot be forfeited or waived. *United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002). Under the doctrine of sovereign immunity, the United States retains immunity from suit unless it has consented to be sued. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Whether the United States has waived sovereign immunity, as well as the scope of the waiver, is a jurisdictional question. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994); *Brown v. United States*, 151 F.3d 800, 803-04 (8th Cir. 1998); *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043-44 (8th Cir. 2000). The terms of the United States' consent to be sued in any court define that court's jurisdiction to

entertain the suit. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 769-70, 85 L. Ed. 1058 (1941). A waiver of sovereign immunity must be "unequivocally expressed" in statutory text, will not be implied, and will be strictly construed, in terms of its scope, in favor of the United States. *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096, 135 L. Ed. 2d 486 (1996). The burden of proving jurisdiction falls on the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). Since Rodgers is proceeding *pro se*, the Court will liberally construe the Complaint for "any plausible basis upon which a waiver of sovereign immunity exists." *Hackworth v. Kansas City Veterans Admin. Med. Ctr.*, No. 6:13-CV-03363-MDH, 2015 WL 506245, at *4 (W.D. Mo. Feb. 6, 2015).

### A. The Quiet Title Act

One plausible basis for a waiver of sovereign immunity can be found in the Quiet Title Act (QTA). It allows the United States to be sued "to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). "Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286, 103 S. Ct. 1811, 1819, 75 L. Ed. 2d 840 (1983). For a court to exercise jurisdiction under the QTA, two conditions must exist: (1) the United States must claim an interest in the property at issue and (2) there must be a disputed title to real property. 28 U.S.C. § 2409a(a); *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1022 (9th Cir. 2001). Here, there is no question that the United States claims an interest in Rodgers' property. The issue in this case is whether Rodgers' Complaint presents a dispute as to title to real property.

The United States initially argued that this case should be dismissed because Rodgers concedes that he sold the United States the easement and, therefore, his Complaint does not

6

present a dispute as to title. Upon review of the relevant law and with due consideration for Rodgers' *pro se* status, the Court ordered additional briefing on the issue of whether Rodgers' Complaint sets forth a scope-of-easement claim under the QTA. [Doc. 14.] It is clear that disputes as to the *existence* of an easement fall within the QTA. *Patterson v. Buffalo Nat. River*, 144 F.3d 569 (8th Cir. 1998); *Burdess v. United States*, 553 F. Supp. 646, 648 (E.D. Ark. 1982); *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978). But courts are split on whether the QTA applies to disputes as to the *scope* of an easement that all parties agree exists. The Ninth Circuit has held that the QTA applies to such claims. *Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009); *see also Beasley v. United States*, No. CV-12-3136-LRS, 2013 WL 1832653 (E.D. Wash. May 1, 2013); *City of N. Las Vegas v. Clark Cnty., Nev.*, No. 2:11-CV-00944-PMP, 2011 WL 3472481 (D. Nev. Aug. 9, 2011); *Grand Canyon W. Ranch, LLC v. Norton*, No. CV 03 2496 PHX EHC, 2006 WL 1127186 (D. Ariz. Apr. 26, 2006); *Kootenai Canyon Ranch, Inc. v. U.S. Forest Serv.*, 338 F. Supp. 2d 1129 (D. Mont. 2004). By contrast, Sixth Circuit authority suggests that the QTA does not apply. *Sherwood v. Tennessee Valley Auth.*, 925 F. Supp. 2d 906 (E.D. Tenn. 2013) *aff'd*, 590 F. App'x 451 (6th Cir. 2014); *Fuqua v. United States*, No. 5:09-CV-212, 2010 WL 1883468 (W.D. Ky. May 11, 2010). This issue is a matter of first impression in the Eighth Circuit. In its supplemental memorandum, the United States argued that the Eighth Circuit would strictly construe the QTA to prohibit scope-of-easement claims.

The Court need not resolve the issue of whether the QTA applies to a scope-of-easement claim. The United States attached a copy of the easement agreement to its supplemental memorandum and the terms of that agreement are dispositive. [Doc. 16-1.] Rodgers' grievances cannot be construed as "disputed title to real property." 28 U.S.C. § 2409a(a). Rodgers maintains that he had the right to build the dams subject to the CAP and to harvest the trees

subject to the fines. However, the easement agreement expressly prohibits Rodgers from "harvesting wood products," "draining, dredging, channeling, filling, leveling, pumping, diking, impounding or related activities," and "building or placing buildings or structures on the easement area" unless such activity is authorized by the United States in writing. [Doc. 16-1 p. 2.] Rodgers also maintains that the United States deprived him of his interest in two duck hunting seasons. While the easement agreement reserves to Rodgers the right to "undeveloped recreational uses, including hunting and fishing, and … leasing of such rights for economic gain," the United States has no corresponding obligation under the agreement to ensure that those uses remain economically viable. [*Id.* at 2.]

Moreover, the United States has broad authority under the easement agreement to manage the easement area and enforce the terms of the agreement. The agreement grants to the United States the right to "undertake … any activities to restore, protect, manage, enhance, and monitor the wetland and other natural values of the easement area." [*Id.* at 3.] If Rodgers fails to comply with any provision of the agreement, the United States has the right to perform necessary work for the prevention or remediation of damage and to assess all expenses against Rodgers. [*Id.*] The Secretary of Agriculture has sole authority to modify or terminate the agreement, any rights not reserved to Rodgers are acquired by the United States, and any ambiguities in the agreement are to be construed in favor of the United States. [*Id.*]

There is no true title dispute in this case. The easement agreement is written to give the United States significant control over the easement area, in return for which Rodgers received over one million dollars. Under the agreement, Rodgers is expressly prohibited from harvesting trees or building dams without written permission and the United States has no obligation to ensure the continued economic viability of his duck hunting business. The scope of the easement

8

is clear; there is nothing to "adjudicate." 28 U.S.C. § 2409a(a); *Robinson*, 586 F.3d at 688 (finding no jurisdiction under QTA where there was no dispute as to land area or intended use of easement); *United States v. Austin Two Tracts, L.P.*, 239 F. Supp. 2d 640, 644 (E.D. Tex. 2002) (finding no jurisdiction under QTA in case involving flowage easement owned by United States where officials ordered landowner to remove fill material from easement area, landowner requested equitable relief, and court found there was no dispute as to what estate and land each party owned). The Court finds that Rodgers' Complaint does not set forth a claim under the QTA and therefore the Court lacks jurisdiction.

### B. Monetary Damages

In response to the Court's order for additional briefing, Rodgers indicated he would like to pursue a bifurcated claim for monetary damages in the United States Court of Federal Claims. Because the Court finds that it lacks jurisdiction under the Quiet Title Act, the issue of bifurcation is moot. Rodgers seeks well over $10,000 in damages and therefore his claim for monetary damages falls within the exclusive jurisdiction of the Court of Federal Claims. 28 U.S.C. § 1346(a)(2). Rodgers is free to refile his claim in that court.[7]

## IV. Conclusion

Based on the foregoing, the Court grants Defendant's Motion to Dismiss. The Court is sympathetic to Rodgers' predicament as a private landowner who entered into an agreement with the United States and now seeks to challenge the United States' conduct under that agreement. However, the Quiet Title Act is not the appropriate vehicle for such a claim. The United States'

---

[7] The Quiet Title Act does not "apply to or affect" an action which "may be or could have been brought" under the Tucker Act, setting forth the jurisdiction of the Court of Federal Claims. 28 U.S.C. § 2409a(a); 28 U.S.C. § 1491(a)(1). Lacking subject matter jurisdiction in this case, this Court expresses no opinion as to whether Rodgers' Complaint states a proper claim for monetary damages under the Tucker Act.

waiver of sovereign immunity under the QTA is limited to the adjudication of disputed title to real property.  Here, there is nothing to adjudicate because the easement agreement is clear.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED**. [Doc. 3.]

**IT IS FURTHER ORDERED** that this action is **DISMISSED** for lack of subject matter jurisdiction.

A separate Judgment will accompany this Memorandum and Order.

Dated this 23rd day of July, 2015.

                                              /s/ Nannette A. Baker
                                              NANNETTE A. BAKER
                                              UNITED STATES MAGISTRATE JUDGE